I'm Tim Wilborn for Appellant Anthony Montero. There are three basic issues in this field. One issue, which I think is actually the foundation of the entire case, is the administrative law judge's failure properly to consider the effects of stress as this claimant experiences stress, and the way his response to stress affects his capacity to engage in sustained work activity. And I have extensive discussion in the briefs about Social Security ruling 8515 on that topic. Counsel, was stress a diagnosis that was given to the ALJ for consideration? Where in the record was that diagnosis or medical finding or testimony regarding stress? Where is that that you ñ where is it in the record that you think the ALJ overlooked the stress implications? Well, Your Honor, in Dr. Tinker's report and also in Dr. Tinker's live testimony, the doctor first wrote a narrative report, and then at the second hearing after the remand from the Appeals Council, he was called to testify live. And in both the report and his live testimony, he discussed the hyperarousal that Mr. Montero experiences as a result of his inability to deal with stress. And that constant state of hyperarousal over a period of years has resulted in a cumulative effect on his functioning, which when you add that to his cardiac abnormalities, it renders him unable to function on a regular and sustained basis. Now, Dr. Tinker is a psychologist, is that correct? That's correct. Now, what authority are you relying upon to support Dr. Tinker's analysis of the physical manifestations? Well, it isn't my position, Your Honor, that Dr. Tinker is qualified to assess solely the physical limitations. If he were to offer an opinion on the effects of the cardiac impairment, the ALJ could properly reject that. However, it's my position that what Dr. Tinker did here is offered an opinion on the effects of these psychological impairments as they manifest themselves in light of this claimant's other impairments. What authority do you have for the proposition that a psychologist can opine on the combined effects of physiological impairments and psychological impairments? What authority are you relying upon for that? There is no authority of which I'm aware stating that a doctor who is just a psychologist has the qualifications to opine on the physical impairments. I said the combination. Okay. To the extent that a particular aspect of Dr. Tinker's opinion considers the combination of impairments, I don't have authority that the ALJ is required to accept it. So would it be fair to say that the ALJ would be acting within proper limitations if he just accepted the psychological portion of Dr. Tinker's report? Yes and no, Your Honor. With regard to Dr. Tinker's opinion, it would be fair to say that the ALJ could consider just the psychological aspects of that opinion. And I believe that if you do that here, that opinion still warrants a finding of disability. But a deeper issue raised by your question, Your Honor, is that if the ALJ is faced with a medical record which has a combination of impairments, as this one does, it's incumbent upon him fully and fairly to develop the record. And if he does not accept the psychologist's assessment of the combination of impairments because of the psychologist's lack of qualifications to comment on the physical aspects, then as a part of his duty fully and fairly to develop the record, he should have called the ideal specialty would have been a psychiatrist. What authority are you citing for the proposition that the ALJ has the obligation to develop the claimant's case? Well, in this court's case of Smolin, the court cited a previous case called Brown and noted that even when a claimant is represented by counsel, an ALJ has an affirmative duty also fully and fairly to develop the record. If the record is incomplete? Well, if the only opinion in the record is the opinion of the psychologist, then I guess the record would be incomplete. If that's what the claimant decides to rely upon, then why does the ALJ have an obligation to supplement that? Well, I guess because at the administrative law judge stage of the appeal, this is a non-adversarial process. In this court, there's an attorney on the other side arguing, but at the ALJ stage, there is no opposing side. But the claimant has the obligation to prove his or her case. That's not the ALJ's responsibility. That's correct, Your Honor. So in conclusion, my position is that if you look at just Dr. Tinker's opinion on the psychological aspects, there are numerous aspects of that opinion which the ALJ did not give any proper reason for rejecting. Now, if the court does not find that those particular aspects of the opinion establish disability as a matter of law, then the appropriate remedy would be to send this case back for further proceedings with instructions for the ALJ to include those unrejected psychological opinions in a proper vocational hypothetical. Did Dr. Tinker say the psychological factors alone would result in disability? He did, Your Honor. And where is that in the record? On page 80 of the excerpts, Dr. Tinker lists the causes and the results. He has a narrative discussion here. And some of the limitations are attributed to a combination of factors, and other of the limitations are attributed to just the psychological factors. And did he say if I consider just the psychological stressors alone, those would render this claimant disabled? Did he say that? He did not say that. However, he did give opinions that the claimant would have certain limitations, which the ALJ neither rejected nor included in a hypothetical. Didn't the ALJ reject the report of Dr. Tinker because he was not qualified to give an opinion with a combination of the psychological and the physiological symptoms? He rejected the opinions on the combinations of impairments, but not on the solely psychological impairments. But if he didn't give an opinion on the psychological factors alone, why would the ALJ be required to reject an opinion that was not given? Well, just for example, Your Honor, one of the opinions is, and I'm reading here from page 80, his ability to make simple work-related decisions is moderately limited because of his compromised and sometimes impaired judgment. That's a psychological impairment. Did he say this is disabling, though? He didn't. But the ALJ has to either reject a specific limitation or include it in a vocational hypothetical. And he didn't either reject this particular limitation or include it in a hypothetical. I understand your position. If I may reserve the remainder. Thank you. Good morning, Your Honors. David Bloom for the Commissioner. The essence of this Court's review is a substantial evidence standard, and where the evidence is mixed, as it is in this case, if the ALJ's interpretation of the evidence is a rational one, this Court should uphold it. Dr. Tinker's opinions are an example of that. The key factor to note about Dr. Tinker's opinion is that on page 162 of the excerpt of record, he states that the psychological symptoms standing alone might not be that severe. He says the same actually about the physical conditions, but he's not qualified to give an opinion on that. But if the psychological symptoms standing alone are not that severe, then his opinion that the claimant is disabled lacks merit. Let me ask you about that. Yeah. Page 188 of the excerpt, that part of the opinion of the ALJ states, in Dr. Tinker's opinion, these mental impairments adversely affect the claimant's ability to perform a host of work-related functions. Accordingly, the ALJ finds that these impairments are severe. So he's finding severe impairments. He does. The ALJ, in fact, gives plaintiff benefit of the doubt throughout his decision regarding physical and mental impairments. Regarding physical, the ALJ notes repeatedly that most of the objective findings were normal, but giving the plaintiff the benefit of the doubt, the ALJ nonetheless limits him to a light work capacity. Similarly, with the mental impairments, the ALJ notes that Dr. Tinker's mental status testing noted that plaintiff's cognitive functioning was largely intact, but giving plaintiff the benefit of the doubt, the ALJ nevertheless reduced his residual functional capacity by several different limitations in the mental area as well. Just finding the impairment severe doesn't mean that it's disabling. And it's unclear that Dr. Tinker, when he testified, was using the word severe in the same term of art way that the ALJ would in the analysis of the decision. Well, what is the significance of the ALJ finding that the impairment is severe? Doesn't it mean severe? Well, severe means that it has significant limitations on plaintiff's ability to work, and the ALJ accounted for those in the rather lengthy and extensive RFC finding that he spells out in the decision. And even given all those severe functional mental limitations, the vocational expert identified three different jobs that plaintiff could perform. He wasn't able to do his past relevant work, but he was able to do the other work that the vocational expert identified. Well, in this case, the ALJ essentially rejected Dr. Tinker's opinion. He rejected his disability opinion. On what grounds? The strongest one is what was alluded to earlier, that really undergirding Dr. Tinker's disability opinion was that plaintiff's physical and mental limitations, as Dr. Tinker saw them, in combination disabled him. But Dr. Tinker is unqualified to offer an opinion on plaintiff's medical condition. Commissioner cited Brosnahan, an Eighth Circuit case in the brief, in which the Eighth Circuit found that an ALJ is entitled to reject a psychologist's opinion if that psychologist partly relies on plaintiff's physical condition. That's exactly what happened here. Dr. Tinker's opinion is really unique from a psychologist. He combines the physical and mental aspects throughout. In fact, even in the narrative report that's in the record, it's the first time I've seen a mental status examination from a psychologist that abruptly includes a plaintiff's grip strength as part of the analysis. It was a very kind of bizarre confluence of physical and mental limitations coming from a psychologist. So the ALJ rightly and rationally focused on that aspect of Dr. Tinker's opinion in rejecting his ultimate disability conclusion. Counsel, what is your response to opposing counsel's argument that the ALJ had the obligation to develop the record? That always is part of an ALJ's obligation. But as you noted, it really kicks in only if the record is incomplete, if the evidence before the ALJ is insufficient to make a determination as to a plaintiff's disability. Here, the record was not incomplete. You had physical evidence from treating physicians. You had physical evidence from testifying medical experts at both hearings. You had a psychological opinion from Dr. Tinker, at least partly. So I'm not sure what much more the ALJ could have or should have developed. There was sufficient evidence there for him to make a decision. Especially with regard to stress, which plaintiff counsels mentioned in the beginning, it's odd that he would rely on that given that at the hearing, plaintiff testified that the main reason he thought he was disabled was because of his chest pain and headaches. So to focus on stress as kind of his response to stress as the missing piece of the puzzle in light of that testimony and Dr. Tinker's testimony misses the mark. What you have here overall is a record of a plaintiff thinking that he was disabled from the very beginning of the relevant period in 1997. His treating physician, Dr. Cuchinod, declining at that time to give him a disability certificate, advising him to stop smoking and drinking. Plaintiff did not comply with those instructions throughout the rest of the relevant period, continued to smoke and drink, and nonetheless is complaining of ongoing chest pains, which haven't been diagnosed. There hasn't been a diagnosis that really explains that, but certainly his noncompliance with those medical instructions could play a part. How did the ALJ deal with the opinion of Dr. Cuchinod that he was, that the claimant was disabled? The ALJ did not address it explicitly, and I acknowledge that in our brief. The ALJ, however, did mention throughout his decision the lack of objective findings undergirding plaintiff's complaints of chest pain, and the ALJ did acknowledge Dr. Cuchinod's findings in that regard. Did it give any reason for disregarding his opinion? No, it did not. I mean, shouldn't he have? I mean, here you've got the treating physician who's kind of at the top of the heap in terms of who should know most about the claimant. Yes, he should have discussed it, and he should have given some reason to reject it. However, that would be more of a problem if the evidence indicated the ALJ was unaware of that opinion, but in the hearing, page 148 of the record, that report was brought out in the second hearing, and plaintiff testified that he had not even spoken to Dr. Cuchinod about his functional limitations before she issued her opinion in January 2000. So that in case the ALJ was aware of it, the ALJ has to condense and summarize the medical record. He didn't include that opinion here. But that opinion is really the essence of what this Court mentioned in Thomas, a brief, conclusory opinion unsupported by clinical findings. But shouldn't the ALJ have said that, though? Yes, the ALJ should have talked about it, but this Court can also infer from the ALJ's discussion of the evidence as a whole that he didn't accept that opinion. What case authority are you citing for the proposition that we can infer that without the ALJ having explicitly rejected the opinion? The best one I can think of is Magellanes that I cited in my brief. It's an older case, but it does state this Court retains its power, capacity, to infer from the ALJ's opinion as a whole. That an opinion was rejected, that a medical opinion was rejected? Yes, that an ALJ rejected a medical opinion by examining the ALJ's decision as a whole. The ALJ doesn't have to state explicitly, I reject Dr. Kushnod's opinion because, and then list reasons. It's certainly preferable when an ALJ does that, but you have to look at the ALJ's entire analysis, and here what you have is an ALJ really giving Planoff the benefit of the doubt throughout the process and noting that Dr. Kushnod herself had noted normal objective findings when she examined Planoff. Okay, tell me the language that you're relying upon in Magellanes. What language are you relying upon specifically? I believe it's a paragraph, I think in that case it was a Dr. Fox, and I think the Court said ALJ does not have to specifically state, I reject Dr. Fox's opinion because, and in that same area of the case, the Court said this Court retains its faculties to make rational inferences from an ALJ's decision. In that case it doesn't even have to discuss, mention? Does it go that far? I don't know that it goes that far. I don't think so. All right, thank you, counsel. We'll give you one minute for rebuttal. Thank you, Your Honor. With regard to Dr. Kushnod's opinion, I would suggest this Court should at a minimum remand this case with instructions for the ALJ either to reject that or to accept it, but to give reasons for doing whatever he does. I don't believe the Magellanes case stands for the proposition that an ALJ may simply ignore such probative evidence. With regard to Dr. Tinker's psychological assessment, I've been looking at transcripts 79 and 80. Dr. Tinker identifies ten different limitations which are impaired, or categories of functioning which are impaired solely by the psychological aspects of the claimant's functioning. In his residual functional capacity assessment, the ALJ listed only one psychological category in which the claimant was impaired. So I think there are nine of them that are missing. All right, thank you, counsel. Thank you, Your Honor. The case just argued is submitted for decision by the Court. The next case on calendar for argument is Dukoloff v. Barnhart. Thank you. Thank you.
judges: T.G. Nelson, Rawlinson, Pollak